MORT ASSIGNMENT

Document drafted and prepared by and
when recorded, return to:

Wells Fargo Home Mortgage
Michael Schmalen, x9999-018
PO Box 1629
Minneapolis, MN 55440-9790

███████████

(Space above this line for recorder use only)

## ASSIGNMENT OF MORTGAGE

For value received, **Wells Fargo Bank, N.A.**, herein "Assignor", whose address is 1 HOME CAMPUS, DES MOINES, IA 50328, the undersigned hereby grants, assigns, and transfers to:

**The Bank of New York Mellon, fka The Bank of New York as Successor in Interest to JP Morgan Chase Bank NA as Trustee for Bear Stearns Asset Backed Securities Trust 2006-SD2, Asset-Backed Certificates, Series 2006-SD2**
One Wall Street, New York, NY 10286

herein "Assignee" its successors and/or assigns, all its right, title, and all beneficial interest under that certain MORTGAGE, herein "Security Instrument" executed by Ralph L Sanders, An Unmarried Man, dated April 11, 2005, in the amount of $313,000.00 and given to Wells Fargo Bank, N.A. and recorded on April 20, 2005 as Document or Instrument Number 104922671 and/or in Book 39474, Page 1072, of Official Records in the County Recorder's office of Broward County, Florida, describing land therein as:

**Property Address:**   561 SW 60 Ave, Plantation, FL 33317
**Parcel ID #:**   N/A
**Legal Description:**   See Attached

Signed this ____6/20/11____.

Witness: _____

Witness: ___Nicholas Hoye___

Wells Fargo Bank, N.A.

_____
**Carissa Keeler**
Vice President Loan Documentation

## FLORIDA ALL PURPOSE NOTARY ACKNOWLEDGEMENT

STATE OF MINNESOTA      }
                        }
COUNTY OF DAKOTA        }

On this ___6/20/11___ before me, ___ANN M GARDNER___, personally appeared ___Carissa Keeler___, Vice President Loan Documentation, Wells Fargo Bank, N.A. , ☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary: ___ANN M GARDNER___
My Commission Expires: __1/31/2013__



ANN M GARDNER
Notary Public
Minnesota
My Commission Expires Jan. 31, 2013

EXHIB 1-1

Page 1 of 2

②
QL

**Legal Description**

Lot 22, in Block 4, of PLANTATION PARK 10TH ADDITION, according to the Plat thereof, as recorded in Plat Book 55, at Page 21, of the Public Records of Broward County, Florida.

$\int$ - 2

## 1018459424 - SANDERS, RALPH

From: gary@gassellaw.com

To:    ralph_l_sanders@yahoo.com

Cc:    ralph.l.sanders@gmail.com

Date:  Thursday, January 26, 2023 at 11:35 AM EST

Mr. Sanders:

Here is the mortgagee title policy you requested.

Thank you

Gary Gassel

**This email and any supporting documents are provided pursuant to Florida Statute 90.408 and are intended as an offer of settlement and compromise and are inadmissible against Plaintiff in any judicial proceeding in this matter**

Thank you

Gary Gassel

Gary Gassel, Esquire

Admitted Florida and North Carolina

Law Office of Gary Gassel, P.A.

2191 Ringling Boulevard

Sarasota, Florida 34237

Phone: 941-952-9322

Fax: 941-365-0907

=====================================

$\mathcal{J}$ - $\mathit{1}$

$\mathcal{A}\mathcal{X}$

Attention: The information contained in this email message is Attorney-Privileged and confidential information intended only for the us of the recipient indicated above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or copying of this communication is strictly prohibited.

If you received this communication in error, please notify us by telephone and return the message to us at the above address via the U.S.Postal Service. Thank You.

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

NOTE: This law firm is deemed to be a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

**In compliance with Fla. R. Civ Pro. 2.561(b)(1), any and/or all pleadings filed in any case involving our firm, are to be served upon this firm via email to Pleadings@Gassellaw.com (primary) or Efiling@Gassellaw.com (secondary). PLEASE ONLY USE ONE**

 Title Policy.pdf
349.2kB

# LOAN POLICY OF TITLE INSURANCE

Issued by **Lawyers Title Insurance Corporation**



**LandAmerica
Lawyers Title**

*Lawyers Title Insurance Corporation is a member of the
LandAmerica family of title insurance underwriters.*

**POLICY NUMBER**

**G51-0223081**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the Insured by reason of:
1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.
The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.
IN WITNESS WHEREOF, LAWYERS TITLE INSURANCE CORPORATION has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**LAWYERS TITLE INSURANCE CORPORATION**

Attest:

_Secretary_



SEAL 1925

By: _President_

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

ALTA Loan Policy (10/17/92)
With Florida Modifications
**Form 1191-71**          2-3          **ORIGINAL**          Valid only if Schedules A and B are attached

## CONDITIONS AND STIPULATIONS

**1.    DEFINITION OF TERMS.**

The following terms when used in this policy mean:

(a)    "insured": the insured named in Schedule A. The term "insured" also includes

(i)    the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii)    any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii)    the parties designated in Section 2(a) of these Conditions and Stipulations.

(b)    "insured claimant": an insured claiming loss or damage.

(c)    "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d)    "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e)    "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f)    "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g)    "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

**2.    CONTINUATION OF INSURANCE.**

(a)    After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b)    After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c)    Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i)    the Amount of Insurance stated in Schedule A,

(ii)    the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii)    the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

**3.    NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**4.    DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.**

(a)    Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b)    The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c)    Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d)    In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5.    PROOF OF LOSS OR DAMAGE.**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6.    OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**

In case of a claim under this policy, the Company shall have the following additional options:

(a)    To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i)    to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii)    to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate,

Continued on next page of cover sheet

# Lawyers Title Insurance Corporation
### *MORTGAGEE POLICY*
## Schedule A

Policy No.:
223081

Agent's File Reference:
05-64 Sanders

Effective Date:   April 15, 2005, or the date and time of recording of the insured mortgage, whichever is later.

Amount of Insurance:  $313,000.00

1.   Name of Insured:   Wells Fargo Bank, N.A.

2.   The estate or interest in the land described in this Schedule and which is encumbered by the insured mortgage is a fee simple (if other, specify same) and is at the effective date hereof vested in:

   Ralph Sanders

3.   The land referred to in this policy is described as follows:

   Lot 22, in Block 4, of PLANTATION PARK 10TH ADDITION, according to the Plat thereof, as recorded in Plat Book 55, at Page 21, of the Public Records of Broward County, Florida.

4.   The mortgage, herein referred to as the insured mortgage, and the assignments thereof, if any, are described as follows:

   Mortgage in the sum of $313,000.00 from Ralph Sanders, a single man to Wells Fargo Bank, N.A. dated April 11, 2005, to be recorded in the Public Records of Broward County, Florida.

Agent No.:  12-40279

Issuing Agent:

**All County Title Services, Inc.**
**2200 N.W. Corporate Blvd., #401**
**Boca Raton, FL 33431**

------------------------------------
Agent's Signature

Form MP-SCH. A
(rev. 1/95)

$2.5$

**DoubleTime®**

# Lawyers Title Insurance Corporation
*MORTGAGEE POLICY*
## Schedule B

Policy No.:                                        Agent's File Reference:
223081                                             05-64 Sanders

This policy does not insure against loss or damage by reason of the following:

1.  The lien of all taxes for the year 2005 and thereafter, which are not yet due and payable.

2.  Rights of tenant(s) in possession, if any, under lease(s) not recorded in the Public Records.

3.  Any adverse ownership claim by the State of Florida by right of sovereignty to any portion of the lands insured hereunder, including submerged, filled and artificially exposed lands, and lands accreted to such lands.

4.  Matters as contained on the Plat of PLANTATION PARK 10TH ADDITION recorded in Plat Book 55, page 21, of the public records of Broward County, Florida.

5.  Covenants, restrictions, conditions, reservations, easements, liens for assessments and other provisions set forth in instrument recorded in Official Records Book 2389, Page 203, re-recorded in Official Records Book 2420, Page 816.

*All Book and Page references are to the Public Records of Broward County, Florida.*

2 - 6

*FLORIDA ENDORSEMENT FORM 9 (3/27/92) (RESTRICTIONS, EASEMENTS, MINERALS)*
# Lawyers Title Insurance Corporation

Endorsement No. 1 to Mortgagee Policy No.: 223081

Lawyers Title Insurance Corporation insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.  Any incorrectness in the assurance that, at Date of Policy:

    (a)  There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

    (b)  Unless expressly excepted in Schedule B:

        (1)  There are no present violations on the land of any enforceable covenants, conditions or restrictions, nor do any existing improvements on the land violate building setback lines shown on a plat of subdivision recorded or filed in the public records.

        (2)  Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition, (i) establish an easement on the land; (ii) provide a lien for liquidated damages; (iii) provide for a private charge or assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

        (3)  There is no encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.

        (4)  There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

        (5)  There are no notices of violations of covenants, conditions and restrictions relating to environmental protection recorded in the public records.

2.  Any future violation on the land of an existing covenant, condition or restriction occurring prior to the acquisition of title to the estate or interest in the land, provided the violation results in:

    (a)  invalidity, loss of priority or enforceability of the lien of the insured mortgage; or

    (b)  loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

3.  Damage to existing improvements (excluding lawns, shrubbery or trees):

    (a)  which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved; or

    (b)  which results from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

4.  Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.

5.  Any final court order or judgment denying the right to maintain any existing improvement on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraph 1(b)(1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the Effective Date of the policy and any prior endorsements, nor does it increase the face amount thereof.

| | | |
|---|---|---|
| **All County Title Services, Inc.** | **April 15, 2005** | **12-40279** |
| Name of Agent | Date | Agent No. |

**Lawyers Title Insurance Corporation**

*President*

Agent's Signature

*Florida Endorsement Form 9 (3/27/92) (Restrictions, Easements, Minerals) (FF9) (rev. 5/94)*
File Number: 05-64 Sanders

**DoubleTime®**

2-7

*ENVIRONMENTAL PROTECTION LIEN ENDORSEMENT (ALTA Form 8.1)*
# Lawyers Title Insurance Corporation

Endorsement No. 2 to Policy No.: 223081

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

Lawyers Title Insurance Corporation insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a) any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

(b) any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

NONE

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

In Witness Whereof, Lawyers Title Insurance Corporation has caused its name and seal to be hereunto affixed by its duly authorized Agent as of the date shown herein, the effective date of this endorsement.


**All County Title Services, Inc.**
Name of Agent

Agent's Signature


12-40279
Agent No.


**Lawyers Title Insurance Corporation**

*President*


ALTA Form 8.1 (rev. 6-89)
File Number: 05-64 Sanders

2-8

**DoubleTime®**

1

*PUD ENDORSEMENT*

# Lawyers Title Insurance Corporation

Endorsement No. 3 to Policy No.: **223081**

Lawyers Title Insurance Corporation hereby insures against loss or damage by reason of:

(1) Present violations of any restrictive covenants referred to in Schedule B which restrict the use of the land. except violations relating to environmental protection unless a notice of a violation thereof has been recorded or filed in the public records and is not excepted in Schedule B. Said restrictive covenants do not contain any provisions which will cause a forfeiture or reversion of title.

(2) Any charges or assessments in favor of any association of homeowners which are provided for in any document referred to in Schedule B due and unpaid at Date of Policy.

(3) The enforced removal of any existing structure on the land (other than a boundary wall or fence) because it encroaches onto adjoining land or onto any easements.

(4) The failure of title by reason of a right of first refusal to purchase the land which was exercised or could have been exercised at Date of Policy.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated. it neither modifies any of the terms and provisions of the policy and any prior endorsements. nor does it extend the effective date of the policy and any prior endorsements. nor does it increase the face amount thereof.

**All County Title Services, Inc.**
Name of Agent

------------------------------
Agent's Signature

**12-40279**
Agent No.

**Lawyers Title Insurance Corporation**

*President*

*ALTA Endorsement Form 5 1 (rev. 2/94)*
File Number: **05-64 Sanders**

**DoubleTime®**

# LOAN POLICY OF TITLE INSURANCE

(with Florida modifications)
American Land Title Association (10/17/92)

Issued by

## Lawyers Title
## Insurance Corporation

Lawyers Title Insurance Corporation
is a member of the LandAmerica family of title insurance
underwriters.



**LandAmerica
Lawyers Title**

LandAmerica Financial Group, Inc.
101 Gateway Centre Parkway
Richmond, Virginia 23235-5153
www.landam.com

Form B 1191-71

---

## THANK YOU.

Title insurance provides for the protection of your
real estate investment. We suggest you keep this
policy in a safe place where it can be readily
available for future reference.

If you have questions about title insurance or the
coverage provided by this policy, contact the
office that issued this policy, or you may call or
write:

Lawyers Title Insurance Corporation
Consumer Affairs
P.O. Box 27567
Richmond, Virginia 23261-7567
*telephone, toll free:* 800 446-7086
*web:* www.landam.com

We thank you for choosing to do business with
Lawyers Title Insurance Corporation, and look
forward to meeting your future title insurance needs.

Lawyers Title Insurance Corporation
is a member of the LandAmerica family of title insurance
underwriters.



**LandAmerica
Lawyers Title**

Specialized Loan
# Servicing©

Part of the Computershare Group
6200 S. Quebec St, Ste. 300 · Greenwood Village, CO 80111

1-800-306-605
1-877-875-098

ⁱ⁾ₗₗₗₗₗₗₗₗₗₗ‖ₗₗₗ‖ₗₗₗₗₗₗₗ

September 7, 2023

RALPH L SANDERS
561 SW 60 AVE
PLANTATION, FL 33317

RE: 1018459424
Property Address:
561 SW 60 AVE
PLANTATION, FL 33317

Dear Ralph L Sanders,

According to our records, the above-referenced mortgage account is delinquent. Specialized Loan Servicing LLC ("SLS") is encouraging you to contact us to discuss possible loss mitigation options. Please call us today to learn more about your options and instructions for how to apply. The longer you wait, or the further you fall behind on your payments, the harder it will be to find a solution.

If you need help, the following options may be possible (most are subject to investor approval):
·   Setup a repayment plan for your loan;
·   Refinance your loan with another lender;
·   Modify the loan terms of your loan;
·   Payment forbearance temporarily gives you more time to pay your monthly payment; or
·   If you are not able to continue paying your mortgage, your best option may be to find more affordable housing. As an alternative to foreclosure. you may be able to sell your home and use the proceeds to pay off your current loan.

For help exploring your options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at www.consumerfinance.gov/mortgagehelp or the Department of Housing and Urban Development ("HUD") at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling HUD at 1-800-569-4287.

If you have questions concerning this letter or need further assistance, you may contact Customer Resolution at 1-800-306-6059, Monday through Friday, 7:00 a.m. until 6:00 p.m. MT. SLS accepts calls from relay services. We provide translation services for individuals who indicate a language preference other than English. Se habla español.

You may also contact SLS or request assistance at:

| Mail | Fax | Email | Web |
|---|---|---|---|
| 6200 S. Quebec St, Ste. 300, Greenwood Village, CO 80111 | 1-877-875-0981 (Page limit per transmission is 25 pages) | crdocs@sls.net | www.sls.net |

Sincerely,

Customer Resolution Department
Specialized Loan Servicing LLC

### PLEASE SEE IMPORTANT DISCLOSURES ON THE FOLLOWING PAGE

EX 5 -1

Specialized Loan
# Servicing

Part of the Computershare Group
6200 S. Quebec St, Ste. 300 • Greenwood Village, CO 80111

1-800-306-6059
1-877-875-0981

**SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY FEDERAL LAW TO ADVISE YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

**BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO INFORM YOU OF THE STATUS OF THE MORTGAGE SECURED BY THE SUBJECT PROPERTY. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. IF YOU RECEIVED A DISCHARGE OF THE DEBT IN BANKRUPTCY, WE ARE AWARE THAT YOU HAVE NO PERSONAL OBLIGATION TO REPAY THE DEBT. WE RETAIN THE RIGHT TO ENFORCE THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY, IF ALLOWED BY LAW AND/OR CONTRACT. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.**

**SUCCESSORS IN INTEREST - IF YOU ARE IN RECEIPT OF THIS COMMUNICATION PURSUANT TO YOUR STATUS AS A SUCCESSOR IN INTEREST TO THE SUBJECT PROPERTY, THIS NOTICE DOES NOT MAKE YOU LIABLE FOR THE MORTGAGE DEBT. UNLESS YOU ARE PERSONALLY LIABLE FOR OR HAVE ASSUMED THE MORTGAGE LOAN, YOU CANNOT BE REQUIRED TO USE YOUR ASSETS TO PAY THE MORTGAGE DEBT. THE LENDER HAS A SECURITY INTEREST IN THE PROPERTY AND A RIGHT TO FORECLOSE ON THE PROPERTY, WHEN PERMITTED BY LAW AND AUTHORIZED UNDER THE MORTGAGE LOAN CONTRACT.**

**Important Notice To Servicemembers And Their Dependents**
If you or any occupant of your home are or recently were on active duty or active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA). This includes protection from foreclosure or eviction. You may also be eligible for benefits and protections under state law or investor policy. SCRA and state Military benefits and protections also may be available if you are the dependent of an eligible Servicemember.

Eligible service may include:
- Active duty with the Army, Navy, Air Force, Marine Corps, or Coast Guard, or
- Active service as a commissioned officer of the National Oceanic and Atmospheric Administration, or
- Active service as a commissioned officer of the Public Health Service, or
- Service with the forces of a nation with which the United States is allied in a war or Military action, or
- Service with the National Guard of a state militia under a state call of duty, or
- Any period when you are absent from duty because of sickness, wounds, leave, or other lawful cause.

For more information, please call SLS at 800-306-6059.

**NOTICES OF ERROR, DIRECT DISPUTES AND REQUESTS FOR INFORMATION (INCLUDING QUALIFIED WRITTEN REQUESTS), MUST BE SUBMITTED IN WRITING TO: SPECIALIZED LOAN SERVICING LLC, P.O. BOX 630147, LITTLETON, CO 80163-0147**

$EX$ 5.2

THIS IS FOR INFORMATIONAL PURPOSES ONLY

Specialized Loan Servicing LLC ("SLS") is writing to inform you of protections afforded to servicemembers or their dependents under the Servicemembers Civil Relief Act. Please read the important information below:

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC § § 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps, and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty.
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Please send orders to:

Specialized Loan Servicing LLC
P.O. Box 636005
Littleton, CO 80163
Fax: 1-720-241-7218

There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php
- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

Specialized Loan
**Servicing** ©

Part of the Computershare Group

6200 S. Quebec St., Ste. 300, Greenwood Village, CO 80111
1-800-306-6062
1-877-875-0981

RALPH L SANDERS
561 SW 60 AVE
PLANTATION, FL 33317

Attached please find your documents from Specialized Loan Servicing LLC (SLS) . If you have any questions concerning these documents, please call us at 1-800-306-6059 and speak with the first available agent.  Thank you for your consideration.

6200 S. Quebec St., Ste. 300, Greenwood Village, CO 80111
Ph: 1-800-306-6059 Fax: 1-877-875-0981

EX B-1



Specialized Loan
# Servicing

Part of the Computershare Group

6200 S. Quebec St., Ste. 300, Greenwood Village, CO 80111

1-800-306-6062
1-877-875-0981

## Second Independent Review of Modification Denial

If the this is your first evaluation since the account was last current, you have the right to request a second independent review to determine your eligibility for a loan modification. To request a second review you must send us your request in writing which must be received by us no later than 09/08/2023. Please include a copy of this letter with your request including any supporting documentation. If this is your first evaluation since the account was last current, and your request is received within the disclosed timeframe, we will not initiate or continue with any scheduled foreclosure during the review. If we have offered you a home retention option and the result of your second independent review changes the offer and results in denial your loan will be enforced according to its original terms. This could include foreclosure. Your written request must either be mailed or faxed to us as follows:

| MAIL | FAX |
|------|-----|
| Specialized Loan Servicing LLC<br>P.O. Box 636005<br>Littleton, CO 80163 | 1-720-241-7218<br>(Page limit per transmission is 25 pages) |

ENCLOSURES:

• Legal Disclosures

The requirements for this evaluation were set forth and performed in accordance with the Pooling and Servicing Agreement between Specialized Loan Servicing LLC and The Bank of New York Mellon, f/k/a The Bank of New York, successor in interest to JPMorgan Chase Bank, N.A. as Trustee for Bear Stearns Asset Backed Securities Trust 2006-SD2, Asset-Backed Certificates, Series 2006-SD2.

If you have questions concerning this letter or need further assistance, you may contact me or Customer Resolution at 1-800-306-6059, Monday through Friday, 7:00 a.m. until 6:00 p.m. MT. SLS accepts calls from relay services. We provide translation services for individuals who indicate a language preference other than English. Se habla español.

If you have other questions about mortgage relief options that cannot be answered by us, please call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). This Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.

Sincerely,

Adrian, 13808
Customer Resolution Department
Specialized Loan Servicing LLC

EX 6.7

## Who owns the land

From: ralph sanders (ralph_l_sanders@yahoo.com)

To:     lgomez@plantation.org; sshalan@plantation.org; nsanchez@plantation.org

Date:  Wednesday, August 23, 2023 at 10:46 AM EDT

Hi

I have been trying to resolve who owns the land on top of the east side of the canal bordering Southwest 60th Ave from SW 6 Street up to SW 4th Street.

Below are three surveys.
    1. 1961 Where there are boundary property corners on the survey along with tie-lines for what appears to be a 10-15 foot wide public walking path between the canal of my property.
    2. 2004 survey when I purchased my home
    3. 2023 survey.
The 2023 survey is very similar to the 1962 survey.

My question is who owns the land in the "tie land"
It is not on the Plat

The house is for sale (foreclosure sale in August) with lot defects.

Before the sale, I am trying to determine what the tie land is used for and who is responsible for the land?

Sincerely
Ralph L. Sanders
561 SW 60th Ave
Plantation, FL. 33317
754.801.7097


561_Survey_561_sw60ave_City_1962_2004.pdf
4MB


20230730_Survey.pdf
359kB


2004 Survey.pdf
1.1MB

561 SW 60 AVENUE

Page 1 of 1



**MARTY KIAR**
**BR WARD**
**C O U N T Y**
PROPERTY APPRAISER

| Site Address | 561 SW 60 AVENUE, PLANTATION FL 33317 | ID # | 5041 11 13 0380 |
|---|---|---|---|
| Property Owner | SANDERS, RALPH | Millage | 2212 |
| Mailing Address | 561 SW 60 AVE PLANTATION FL 33317 | Use | 01 |
| Abbr Legal Description | PLANTATION PARK 10 ADD 55-21 B LOT 22 BLK 4 | | |

**The just values displayed below were set in compliance with Sec. 193.011, Fla. Stat., and include a reduction for costs of sale and other adjustments required by Sec. 193.011(8).**

| | | Property Assessment Values | | | |
|---|---|---|---|---|---|
| Year | Land | Building / Improvement | Just / Market Value | Assessed / SOH Value | Tax |
| 2020 | $180,250 | $177,980 | $358,230 | $244,940 | |
| 2019 | $180,250 | $177,980 | $358,230 | $239,440 | $4,123.24 |
| 2018 | $180,250 | $177,980 | $358,230 | $234,980 | $3,972.78 |

| 2020 Exemptions and Taxable Values by Taxing Authority | | | | |
|---|---|---|---|---|
| | County | School Board | Municipal | Independent |
| Just Value | $358,230 | $358,230 | $358,230 | $358,230 |
| Portability | 0 | 0 | 0 | 0 |
| Assessed/SOH 05 | $244,940 | $244,940 | $244,940 | $244,940 |
| Homestead 100% | $25,000 | $25,000 | $25,000 | $25,000 |
| Add. Homestead | $25,000 | 0 | $25,000 | $25,000 |
| Wid/Vet/Dis 0 | $1,000 | $1,000 | $1,000 | $1,000 |
| Senior | 0 | 0 | 0 | 0 |
| Exempt Type | 0 | 0 | 0 | 0 |
| Taxable | $193,940 | $218,940 | $193,940 | $193,940 |

| Sales History | | | | Land Calculations | | |
|---|---|---|---|---|---|---|
| Date | Type | Price | Book/Page or CIN | Price | Factor | Type |
| 5/12/2004 | SWD | $292,000 | 37500 / 386 | $9.00 | 20,028 | SF |
| 7/8/2003 | CET | $225,500 | 35583 / 515 | | | |
| 2/11/2002 | SWD | $174,000 | 32807 / 1310 | | | |
| 8/4/2000 | CET | | 30760 / 741 | Adj. Bldg. S.F. (Card, Sketch) | | 2583 |
| 12/1/1987 | WD | $125,000 | 15040 / 950 | Units/Beds/Baths | | 1/3/2 |
| | | | | Eff./Act. Year Built | | 1963/1962 |

| Special Assessments | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Fire | Garb | Light | Drain | Impr | Safe | Storm | Clean | Misc |
| | | | P | | | PL | | |
| | | | P | | | | | |



... ... ADDITION, according to the plat ... Book 33 at Page 21 of the Public Records of

August 22, 1962                    Order #1275

... that this ... survey of the above described ... and shown to the best of my knowledge and belief ... and platted under my direction.

Revised September 28, 1962.

9.3



BOUNDARY SURVEY

LOT 7

LOT 20

LOT 21

LOT 6

LOT 22

PARCEL "A"

LOT 5

PARCEL "B"

LOT 23

SOUTHWEST 60TH AVENUE
R/W VARIES

LANDSCAPING - EXISTING -
TO CODE - IN GOOD
CONDITION

double gate
1-2' of fence on
each side

1" = 30'     PER PLAT

9.3

PURSUANT TO CITY CODE.

TARGET SURVEYING, Inc.

LOT 20, B

C2

CANAL

20' CANAL
MAINTENANCE
EASEMENT

+5.82        +5.79      +6

+6.16

30' CANAL RIGHT OF WAY

+5.96

EDGE OF
WATER ±

3.73

+6.28

15.00'        15.00'

5.39

6' WOOD
FENCE

WEST    75.23'

SET 1/2" IRON ROD
& CAP LB3635
o/s E-25.00'

N-0.62'

N-1.20'

4' CHAIN
LINK FENCE

7.5' UTILITY
EASEMENT

S-0.19'

SET
&

LOT 6, BLOCK 4

PROPERTY
CORNER MARKER

P.4



561 SW. 60 Ave

**BOUNDARY SURVEY**

B10 00424

PERMIT NO. _____ PARCEL "A"

REVIEWED FOR CODE COMPLIANCE

| REVIEWED BY | DATE APPROVED |
|---|---|
| BUILDING DEPT. | |
| ELECTRICAL DEPT. | |
| PLUMBING | |
| MECHANICAL | LOT 21 |
| FIRE | |
| ENGINEERING | |
| LANDSCAPE | |
| ZONING | |
| UTILITIES | |
| POLICE | |

PARCEL "B"

LOT 20

LOT 23

LOT 22

LOT 7     LOT 6     LOT 5

TARGET SURVEYING, INC.

PHONE: (561) 640-0005 FAX: (561) 640-0576

9.5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN BANKRUPTCY DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

*JORGE & ROOSMAN*

In re:

RALPH LEVI SANDERS, JR.

CASE NO 22-14766-SMG

CHAPTER 13

Plaintiff Debtor.

_____/

## MOTION FOR CONTEMPT FOR

### 1. VIOLATING COURT ORDER

### 2. INTERFERENCE WITH THE BANKRUPTCY PLAN

### 3. COMMITTING FRAUD UPON THE COURT BY OFFICER OF THE COURT

### 4. DESTRUCTION OF TITLE INSURANCE CLAIMS AND POLICIES IN ADDITION TO NO KNOWLEDGE( OF TITLE INSURANCE From SLS legal recording based on Florida and Fed)

### 5. BANK NEW YORK MELLON HAD/HAS NO STANDING TO FILE FORECLOSURE DUE TO IMPROPER ASSIGNMENT OF MORTGAGE PER FIDELITY NATIONAL FINANICAL, WELLS FARGO WEBSITE AND LENDER TITLE INSURANCE POLICY PROVIDED BY …..

AND NOW, comes the Debtor, Ralph Levi Sanders, Jr., by and through himself, *pro se*, to file

the instant motion and in support thereof avers as follows: due to new documentation supplied by

City of Plantation city council minutes. New surveys

## 1. **VIOLATING COURT ORDER**

1. The Court ordered and directed the parties to comply with what is known as the "Third
Amended Plan" which the Creditor has failed to comply with through the present moment.

2. The Third Amended Plan contains terms and conditions that the parties were required to
comply with, such as having valid Lender Title Insurance POLICY and proper assign

3. The Order came with a safe harbor provision if the case was dismissed which the Creditor has
breached by pursuing action against the Debtor prior to the conclusion of the same.

4. Furthermore, there was an indication that the Debtor would receive credit for a pro-rated
amount that has not taken place.

5. [I]n order to ensure the orderly administration of justice, [a district court] has the authority and
responsibility to set and enforce reasonable deadlines." Lowe's Home Centers, Inc. v. Olin Corp.,
313 F.3d 1307, 1315 (11th Cir. 2002). "[C]ase management depends on enforceable deadlines. . .
. In managing their caseloads, district courts are entitled to—'indeed they must—enforce
deadlines.'" Flint v. City of Belvidere, 791 F.3d 764, 768 (7th Cir. 2015) (citations omitted). The
Court's authority to sanction parties and/or their counsel for non-compliance with a discovery-
related order includes (1) criminal contempt, (2) the Court's inherent authority, (3) 28 U.S.C. §
1927, (4) Federal Rule of Civil Procedure 37(b)(2), (5) civil contempt, and (6) Federal Rule of
Civil Procedure 16(f).

6. Here, there are provisions of the Third Amended Plan that have not been followed willfully by
the opposing parties which warrant a finding of contempt.

WHEREFORE, based on the foregoing, the Debtor respectfully requests that this Honorable
Court find the Creditor be found in contempt for the reasons stated herein.

17

2. COMMITTING FRAUD UPON THE COURT BY OFFICER OF THE COURT

A checklist of items needed to prove Fraud against the court including intention

a) The Creditor's attorney stated that the defendant had not paid any money since the foreclosure started. Defendant has been in Chapter 13 bankruptcy, per Pacer.Gov website and Plaintiff's ledger book submitted by Plaintiff to the Trustees of Federal Judge Sam Grossman and Federal Judge Peter Russin; payments have been made by the debtor to the creditor

b)

Legality of using unmarketable in additional zoning issue assets as collateral in addition to using the Foreclosure court to market the defective

   a. When the issue started

   b. Background

17

c. The Markable Record Title Act states that the property cannot even be transferred, sold, given away ...

d. I have notified the following parties

    i. Specialized Loan Servicing that I cannot legally act.

    ii. Federal Bankruptcy Court

    iii. Government agencies that agree there is a title issue of who owns the land

        1. South Florida Water Management District

        2. Old Plantation Water Control District

        3. City of Plantation Directory of utilities that wished an easement would disappear. The easement is behind could not and 16 other homes.

        4. Broward County Highway and Bridges Department. The Bridge going over the canal does not meet the specifications from when it was built to now. The same issue as the land-based homes on the east side of the canal

        5. Florida Department of Transportation

    iv. I have talked with some neighbors. They stated that they cannot sell their homes.

17

3. Alterative assets that should be used as payment per State of Florida statutes is the title bought the lender was required to purchase if the property is not as described when we purchased it.

    a. Is Plaintiff using the foreclosure court to commit at the least an unethical act selling a non-curable PHYSICALLY defective property

4. There are four instances of Fraud Against The Court by the plaintiff

5. Breach of contract(s) Lender Title Insurance

6. Destruction of $313,000 asset

7. "We pay cash for your house."

8. Breach of Implied contract.

9. Federal Court Hearing called by Federal Bankruptcy Judge Sam Grossman regarding this property and the title issues it has. All parties agreed that the title issues need to be fixed in court. The agreeing parties included Bank New York Mellon's Legal representative.

10.     Foreclosure does not cure the physical defect and is contrary to the reason why the State of Florida set up the statute that requires requirements

11.    Debtor has two Title/Warranty policies that would disappear if the foreclosure is allowed to continue

    a. Owner Title Insurance policy $300,000.

    b. United States Government 'forever warranty' deed. Value $200,000

12.    ~~The Lender has a $313,000 title insurance policies~~

13.    The plaintiff has stated that Defendant turned on prior offers from the lender to short-sell the property. The other offers would require the defendant to commit a crime.

14.    Per Florida Civil Rights Act: **Retaliation**: State and federal laws prevent Florida employers from firing employees for reasons considered retaliatory in nature. **Furthermore, they are not allowed to terminate employees who refuse to engage in illegal activities or commit crimes on the employer's behalf.**

15.    **I have the surveys of my neighbor's property from The City of Plantation reflecting how the Canal Maintenance Easement is placed. Very inconsistent placement**

Attached are the following items

    a. Broward County  Government records of the Plat for the neighborhood from 1958 and neighborhood were never replat to reflect reality. Book 55, page 27

**Page 6 of 12**

*17*

b. Broward County government Aerial photos reflecting the other canal systems in the area and mine built during the same period.

## COUNT FOUR OF CONTEMPT OF COURT

## DESTRUCTION OF TITLE INSURANCE CLAIMS AND  POLICIES IN ADDITION TO NO KNOWLEDGE( OF TITLE INSURANCE From SLS legal recording based on Florida and Federal)

17

# Count 5 of 5 Contempt of Court

## BANK NEW YORK MELLON HAD/HAS NO STANDING TO FILE FORECLOSURE DUE TO IMPROPER ASSIGNMENT OF MORTGAGE PACKAGE PER FIDELITY NATIONAL FINANCIAL, WELLS FARGO WEBSITE AND LENDER TITLE INSURANCE POLICY PROVIDED BY

(a) Plaintiff had purchased a Mortgage Package from Wells Fargo

(b) Wells Fargo defines the Mortgage Package in four separate arenas

    (i)  Wells Fargo Website for the definition of Mortgage Package(s)

    (ii) The mortgage itself which defines the area of a mortgage and the different parties' duties. See Mortgage

    (iii) The Lender's Title Insurance policy. The Lender title insurance policy under Wells Fargo specified Wells Fargo as the Lender

    (iv) From the Lender title insurance the duties of the primary lender and subsequent assigned lender.

(c) The lender can use the lender title insurance policy as they wish EXCEPT voiding the Lender title insurance policy. One of the parts of the mortgage package

17

(d) Wells Fargo assigned the mortgage to 3rd party, Bank New York Mellon. (See assignment)

(e) Thirty days after the assignment of just the note part of the mortgage, BNYM filed foreclosed against the plaintiff.

(f) Per the Wells Frago copy of the lender title insurance policy requires the new lender to have a title search of the note/corrallal in case title issues have occurred. Since the Lender title Insurance policy was issued.

    (i) Per the Plaintiff's research while investigating the missing land issue found the following title issues regarding who is the owner of the property prior to my ownership

        1. Four parties claiming ownership of the property.

        2. One government loan that has become the primary loan. The loan is recorded in the Broward County Records. The loan was a second note from the prior owner. The note survived the prior foreclosure to now become the primary note. The interest/late fees have been accommodating since 2001. Plaintiff had purchased his home in 2004

(g) In the year 2019, the residents of the east side of the canal land loss became noticeable.

(h) In March 2023 when BNYM commented on the first, second … contempt of court in State court and District court.

(i) Plaintiff discovered the City of Plantation had been scanning in old documents

(j) Records of City Council hearings (4) dealt with the Canal Maintenance Easement that myself and my neighbors are being negatively impacted.

17

(k) New Survey done in 2023 matches the first survey performed in 1962. Neither the Plat nor the survey that the lender is using to foreclose on.

(l) The defendant is foreclosing on land that does not belong to the Plaintiff.

(m) The land and the house is not repairable unless with a bulldozer.

    (i) Confirmation of that

        1. City of Plantation code with setback issue of house to canal, surveys.

        2. GC/ and a few attorneys. One attorney was in the Southern District Bankruptcy Court. Attorney Robson was helping pro-se litigates find attorneys. The Plaintiff was his typical self with the volume of emails with documentation. Attorney Grace Robison is now known as Judge Grace Robison of the Middle District Bankruptcy Court.

2) Claim amount/action

DATED: August 10,2023                    Respectfully Submitted,

`.`

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:
RALPH LEVI SANDERS, JR.                    CASE NO. 22-14766-SMG
                                           CHAPTER 13

Debtor.
_____/

**<u>PROPOSED ORDER</u>**

AND NOW, on this _____ day of _____, 2023, upon consideration of

the Debtor's motion for contempt for violation of court ordere, it is hereby ORDERED that said

motion is hereby GRANTED.

BY THE COURT:

_____

Select Year: 2022 ✔ Go

# The 2022 Florida Statutes

**701.02    Assignment not effectual against creditors unless recorded and indicated in title of document; applicability.—**

(1)   An assignment of a mortgage upon real property or of any interest therein, is not good or effectual in law or equity, against creditors or subsequent purchasers, for a valuable consideration, and without notice, unless the assignment is contained in a document that, in its title, indicates an assignment of mortgage and is recorded according to law.

(2)   This section also applies to assignments of mortgages resulting from transfers of all or any part or parts of the debt, note or notes secured by mortgage, and none of same is effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration without notice, unless a duly executed assignment be recorded according to law.

(3)   Any assignment of a mortgage, duly executed and recorded according to law, purporting to assign the principal of the mortgage debt or the unpaid balance of such principal, shall, as against subsequent purchasers and creditors for value and without notice, be held and deemed to assign any and all accrued and unpaid interest secured by such mortgage, unless such interest is specifically and affirmatively reserved in such an assignment by the assignor, and a reservation of such interest or any part thereof may not be implied.

(4)   Notwithstanding subsections (1), (2), and (3) governing the assignment of mortgages, chapters 670-680 of the Uniform Commercial Code of this state govern the attachment and perfection of a security interest in a mortgage upon real property and in a promissory note or other right to payment or performance secured by that mortgage. The assignment of such a mortgage need not be recorded under this section for purposes of attachment or perfection of a security interest in the mortgage under the Uniform Commercial Code.

(5)   Notwithstanding subsection (4), a creditor or subsequent purchaser of real property or any interest therein, for valuable consideration and without notice, is entitled to rely on a full or partial release, discharge, consent, joinder, subordination, satisfaction, or assignment of a mortgage upon such property made by the mortgagee of record, without regard to the filing of any Uniform Commercial Code financing statement that purports to perfect a security interest in the mortgage or in a promissory note or other right to payment or performance secured by the mortgage, and the filing of any such financing statement does not constitute notice for the purposes of this section. For the purposes of this subsection, the term "mortgagee of record" means the person named as the mortgagee in the recorded mortgage or, if an assignment of the mortgage has been recorded in accordance with this section, the term "mortgagee of record" means the assignee named in the recorded assignment.

History.—s. 1, ch. 6909, 1915; RGS 3841; CGL 5744; s. 13, ch. 20954, 1941; s. 2, ch. 89-41; s. 20, ch. 2005-241.

Copyright © 1995-2022 The Florida Legislature • Privacy Statement • Contact Us

20

05-64

ALL COUNTY TITLE SERVICES, INC.
2200 NW CORPORATE BLVD., SUITE 401
BOCA RATON, FL 33431

Record & Return to

WL

Return To:
**WELLS FARGO BANK, N.A.**
**FINAL DOCUMENTS X4701-022**
**3601 MINNESOTA DRIVE**
**BLOOMINGTON, MN 55435-5284**

This document was prepared by:
**KENNETH BRACY**
**WELLS FARGO BANK, N.A.**
**850 TRAFALGAR BLVD,350**
**MAITLAND, FL 32751-**

——————————— [Space Above This Line For Recording Data] ———————————

## MORTGAGE

0143369122

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used
in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **APRIL 11, 2005**
together with all Riders to this document.
(B) "Borrower" is
**RALPH L SANDERS, AN UNMARRIED MAN**

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is **WELLS FARGO BANK, N.A.**

Lender is a **National Association**
organized and existing under the laws of **THE UNITED STATES OF AMERICA**

FLORIDA - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 1 of 18      Initials: ——

FORM 3010   1/01

SFL01   Rev 11/02/00

Lender's address is

P. O. BOX 5137, DES MOINES, IA 50306-5137
Lender is the mortgagee under this Security Instrument.
(D) "Note " means the promissory note signed by Borrower and dated APRIL 11, 2005
The Note states that Borrower owes Lender THREE HUNDRED THIRTEEN THOUSAND
AND NO/100                                                                Dollars
(U.S. $ .....313,000.00..............) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than MAY 1, 2035
(E) "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider             ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider        ☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of,
or default on, the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

SFL02    Rev 12/19/00              Page 2 of 18        Initials:_____        FORM 3010    1/01

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the **County** of **BROWARD**

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]:

**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

Parcel ID Number:                         which currently has the address of
**581 SW 80 AVE**                                                         [Street]
                    **PLANTATION**         [City], Florida    **33317**    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

SFL03   Rev 11/02/00          Page 3 of 18          Initials:_____          FORM 3010   1/01



BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

SFL04    Rev 11/02/00                    Page 4 of 18          Initials:_____          **FORM 3010**    1/01

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

SFL05   Rev 11/14/00                 Page 5 of 19              Initials:_____          FORM 3010   1/01



The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection

SFL07    Rev 09/11/00                    Page 7 of 18              Initials:_____              **FORM 3010**    1/01

shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

SFL08    Rev 09/11/00                    Page 8 of 18                    Initials: _____                    FORM 3010    1/01



**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage

SFL09   Rev 09/11/00                    Page 9 of 18        Initials:_____        FORM 3010   1/01



ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact the the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designed payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designed payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

SFL10   Rev 09/11/00                Page 10 of 18            Initials:_____        FORM 3010   1/01

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

SFL11   Rev 11/22/00                   Page 11 of 18          Initials:_____          FORM 3010   1/01

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

SFL12   Rev 11/02/00                 Page 12 of 18          Initials:_____          **FORM 3010   1/01**

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

SFL13   Rev 11/02/00              Page 13 of 19          Initials: _____          **FORM 3010**   1/01

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's Interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note,

SFL14    Rev 12/27/00                    Page 14 of 18          Initials:_____          FORM 3010    1/01

this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

SFL15    Rev 09/11/00                    Page 15 of 19                Initials:_____        FORM 3010    1/01

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

SFL16   Rev 09/11/00                     Page 16 of 18          Initials:_____          FORM 3010   1/01



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
Notorial A Wutang                        RALPH L. SANDERS        Borrower

                                         561 SW 68 AVE
                                         PLANTATION, FL 33317

_____

SFL17   Rev 12/27/00          Page 17 of 19          Initials:_____          FORM 3010   1/01

**STATE OF FLORIDA,**      **BROWARD**      **County ss:**

    This foregoing instrument was acknowledged before me this     April 11, 2005     by
**RALPH L SANDERS, AN UNMARRIED MAN**

who is personally known to me or who has produced *dk i ovs /i ceuka* as identification.

Notary Public

Deborah A. Watarz
Commission # DD084515
Expires Feb. 20, 2006
Bonded Thru
Atlantic Bonding Co., Inc.

# Exhibit A

Lot 22, in Block 4, of PLANTATION PARK 10TH ADDITION, according to the Plat thereof, as recorded in Plat Book 55, at Page 21, of the Public Records of Broward County, Florida.

Loan 1018459424: Gold mine of information regarding Wells Fargo did not have right to assign

From: ralph sanders (ralph_l_sanders@yahoo.com)

To: crdocs@sls.net

Date: Sunday, April 23, 2023 at 03:18 PM EDT

The City of Plantation is still digitizing the images of the city record. The city clerk has offered to if there are any specific records the I/We want to digitize.

I am focusing on insurance policies if a plan does not work, still goes back to Wells Fargo using their Lender Title insurance policy.

https://www.plantation.org/government/departments/city-clerk

---

Plantation > ... > Executed Agreement > Hazen And Sawyer, P.C.

Q  ∧ ∨    116  of 117          — +  Automatic Zoom  ∨                                              I  ɛ



| | | HAZE&SA-01 | KGODWIN |
|---|---|---|---|
| **ACORD** | **CERTIFICATE OF LIABILITY INSURANCE** | | DATE (MM/DD/YYYY) 5/5/2020 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME | | |
|---|---|---|---|
| Ames & Gough 8300 Greensboro Drive Suite 980 McLean, VA 22102 | PHONE (A/C, No, Ext): (703) 827-2277 | | FAX (A/C, No): (703) 827-2279 |
| | E-MAIL ADDRESS: admin@amesgough.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Hartford Fire Insurance Company A+ (XV) | | 19682 |
| **INSURED** | INSURER B : Hartford Casualty Insurance Company A+ (XV) | | 29424 |
| Hazen and Sawyer 498 Seventh Avenue New York, NY 10018 | INSURER C : Twin City Fire Insurance Company A+ (XV) | | 29459 |
| | INSURER D : Continental Casualty Company (CNA) A, XV | | 20443 |
| | INSURER E : | | |
| | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR | ADDL SUBR | | POLICY EFF | POLICY EXP | |
|---|---|---|---|---|---|

RE: Title Insurance claim for 19 homes due to defective Plat easement. SFWMD agrees & Fidelity Insurance

From: Benjamin Dishowitz (bdishowitz@sflalaw.com)

To:   ralph_l_sanders@yahoo.com; info@sflalaw.com

Date: Thursday, August 18, 2022 at 04:33 PM EDT


I'm sorry Mr. Sanders. This firm has a conflict with the parties involved and cannot represent you in this matter.

Please seek out other counsel soon as your claim may be subject to a statute of limitations.

Regards,


# Benjamin R. Dishowitz, Esq.

Doumar, Allsworth, Laystrom, Voigt,
Wachs, Adair & Dishowitz, LLP
1177 Southeast Third Avenue
Ft. Lauderdale, Florida 33316
Tel: (954) 762-3442
Fax: (954) 525-3423
Email: bdishowitz@sflalaw.com

IRS Circular 230 Disclosure: Please note that the views expressed herein or in any attachments hereto are not intended to constitute a "reliance opinion" under applicable Treasury Regulations, and accordingly are not intended or written to be used, and may not be used or relied upon, for the purpose of (i) avoiding tax-related penalties that may be imposed by the Internal Revenue Service, or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

NOTICE: THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE COLLECT AND DELETE THE MATERIAL FROM ANY COMPUTER. THANK YOU.


**From:** ralph sanders <ralph_l_sanders@yahoo.com>
**Sent:** Thursday, August 18, 2022 3:42 PM
**To:** info@sflalaw.com
**Cc:** ralph_l_Sanders@yahoo.com
**Subject:** Title Insurance claim for 19 homes due to defective Plat easement. SFWMD agrees & Fidelity Insurance


I/We need legal help


I live at 561 SW 60th ave, Plantation near Fig Tree park.

My home is on the canal between SW 62 ave & 60th ave.


I have an open homeowner insurance claim.

The GC's who came out to give me an estimate informed me that I had a setback issue from the canal to building. It turns out that I have a major setback issue so do all of my neighbors

The plats for Plantation Park 4 (book 49, page 27) & Plantation Park 10 (Book 55, Page 21) reflect on paper that there is supposed to be a 20-wide Canal Maintenance Easement. Unfortunately, reality does not match paperwork. On the day one survey, when my home was built. My home was 14.5 ft from the canal bank

The second damaging event occurred in 2010 when a non-permitted pump designed for a 50-foot wide canal system got fed into a 30-foot-wide canal

The 14.5-foot distance got shorter

My next-door neighbor has harbor into her backyard. The property is the life savings that she cannot sell. That is true for a few other houses and life savings that cannot sell.

The following parties agree that I/We have an issue.

Fidelity National Title insurance

https://www.fntic.com/

A Title insurance Claim was filed. They informed me that my lot is not what I thought it was. I was figuring a few feet lost. Fidelity informed me about Plat. Fidelity agreed I have a valid claim, but they did not like the survey. My lot per BCPA is 20,028 sq feet.In reality, the lot is 12,800. SFWMD said (email & voice) that the buildings have to be 40 feet from the canal bank. If you look at the east side of the canal, not a single home is legal. Per SFWMD Broward office, the City of Plantation can level the area with just some noise.

SFWMD in their Broward & Palm Beach office already agrees that we have a defective easement.

Property Lawyer Scott Golden law firm. His advice, sue the City of Plantation

I am looking for a law firm that can handle the legal issues and know a builder (Lennar), 19 homes, and 21 families. Two of the homes are rented out. The two owners live in Parkland. Doesn't Lennar have multi-generation homes? On good terms with the City of Plantation? The homes on the west side of the canal can be cured, but the east side of the canal (9 homes) is very questionable

The question, any idea if some builders would be interested in the westside of Plat book 154 page 37

Please let me know if you would like to schedule a meeting. PLEASE, This has gotten to be too much.

Ralph Sanders

561 SW 60th ave

Plantation, Fl. 33317


Phone:754.801.7097


from 1963 -2000 aerial photos

The blue encircled homes plat has a canal maintenance easement on paper, and in reality

The yellow encircled homes plat has a canal maintenance easement on paper, but not in reality



The layout of what information SFWMD is getting.  There are sub-levels. I am still looking out for neighbors.

| Name | Status | Date modified | Type |
|------|--------|---------------|------|
| 1. History_Outline | ⟳ | 8/17/2022 5:03 PM | File folder |
| 100_Plat | ⟳ | 8/17/2022 9:35 PM | File folder |
| 200_Surveys | ⟳ | 8/17/2022 2:22 PM | File folder |
| 300_Who_Owns_Canal | ⟳ | 8/17/2022 2:44 PM | File folder |
| 350_Damage_to_Canal | ⟳ | 8/17/2022 2:41 PM | File folder |
| 400_Title_Insurance | ⟳ | 8/18/2022 9:25 AM | File folder |
| 500_Photos | ⟳ | 8/17/2022 4:23 PM | File folder |
| 600.Permits_issued_by_city_vs_state_Govt_VS_Fed_Goft | ⟳ | 8/17/2022 2:19 PM | File folder |
| 700_CityofPlantation,SFWMD_Army_Corp_Communication | ⟳ | 8/17/2022 2:29 PM | File folder |
| 800_Statues_Cases_1950_1965_newpaper_reports | ⟳ | 8/18/2022 9:26 AM | File folder |
| 900.Misc_Research | ⟳ | 8/17/2022 4:20 PM | File folder |

_____

RE: Notification: New Citizens Request Received - C008013-081022

Yahoo/Inbox

- Priest, Gary <gpriest@sfwmd.gov>

    To:ralph_l_Sanders@yahoo.com


Mr. Sanders,

We received your inquiry and will begin researching the available information. In your email, you reference an "attached link, zoom in enough to see "PLANTATION" in one of the squares", can you please provide that link and any copies of the plat you may already have.


Sincerely,

Gary R. Priest, P.E.

Engineering Section Administrator

Environmental Resource Bureau | Regulation Division

South Florida Water Management District

(863) 462-5260, Ext. 3016

Email: gpriest@sfwmd.gov

 *sfwmd.gov/ePermitting*

**Note:**

While the District supports that it is commonplace and convenient to collaborate via email during the pre-application/application process, Permit Applications and Responses to a Request for Additional Information (RAI) submitted via email are not an official submittal (Section 4.4 of Environmental Resource Permit Applicant's Handbook Volume I). For timely and efficient processing of permit applications and RAI responses, please submit online using ePermitting (link above).

**From:** South Florida Water Management District <sfwmd@mycusthelp.net>
**Sent:** Thursday, August 11, 2022 8:34 AM
**To:** Blythe, Wayne <wblythe@sfwmd.gov>; Cook, Brad <bcook@sfwmd.gov>; Cruz, Virg <vcruz@sfwmd.gov>; Krumlauf, Jennifer <jkrumla@sfwmd.gov>; Lancaster, Stephanie <slancast@sfwmd.gov>; Lawrence, Melissa <mroberts@sfwmd.gov>; Layman, Laura <llayman@sfwmd.gov>; Madsen, Christine <cmadsen@sfwmd.gov>; Markle, Jesse <jmarkle@sfwmd.gov>; Prather, Lisa <lprather@sfwmd.gov>; Priest, Gary <gpriest@sfwmd.gov>; Sunderland, Simon <ssunder@sfwmd.gov>
**Subject:** Notification: New Citizens Request Received - C008013-081022

[Please remember, this is an external email]

## Overview of the Request

Description: Hi I live in Plantation on SFWMD/OPWCD canal system. My neighbors and I have a unique canal system compared to all other Broward County canal systems. All canals system has two parts. The first part is the water, and the 2nd part of the canal maintenance easement. The canal here only has the water part, no canal maintenance. Per Broward County Records Book 49 Page 27 and Book 55 page 21. reflects that the canal maintenance is supposed to be there, but the canal maintenance easement is not physical there Broward county had aerial photos from 1963 - 2000 taken every two years. In the attached link, zoom in enough to see "PLANTATION" in one of the squares. Go down one square and one square e to the right. As you zoom in, you will see the words "Plantation Park" just above a pond and canal. The canal in the photos does not have the maintenance easement from day 1, yet all other developments have the canal maintenance. How does SFWMD handle issues where the buildings are 14 feet from the canal bank, not 20 feet from the canal bank per county code, much less than the 40 feet from the canal bank as required by SFWMD? Do I get to find out how good my lender title insurance and owners' title insurance are and make this land into a park? Of course, the title insurance companies will be looking to recover their money I will add more Plat and photos of the homes' damage due to your easement. Is the easement public Do you defend your waterways or ?? One law firm advised just suing the City of Plantation, but the City and SFWMD lose. The first layer of ownership of the easement is the City of Plantation and then SFWMD. I can't even repair my home due to setbacks per GCs.

Getting a variance of 25.5 feet * 180 feet (4,590 sq ft) of land that does not exist and that I am paying land tax is not a workable solution, plus attempting to repair damage to my home from storms. The issue is already in front of a bankruptcy Judge. There are 19 homes similar to my home and damaged. What do you propose? And please don't pass the buck. 561 SW 60 the Ave Plantation, Fl 33317 754.801.7097

Customer Full Name: Ralph L. Sanders

Company Name:

Customer Email Address (if provided): ralph_l_Sanders@yahoo.com

Customer Phone Number (if provided): 754-801-7097 Ext.

Create Date: 8/10/2022 11:04:58 PM

Reference # C008013-081022

Status: Open

This is notification the system received a new Citizens Request or a request has been reassigned to you.

The request has been routed to the appropriate staff members. Below is the link to the specific request.

https://sfwmd.mycusthelpadmin.com/webapp/zadmin/ServiceRequests/Details.aspx?id=8013

This is an auto-generated email and has originated from an unmonitored email account. Please DO NOT